**AFFIRM; and Opinion Filed June 23, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00177-CV

## EX PARTE JOHN CLOUD

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. X13-1239-P**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

John Cloud appeals from an order denying the expunction of his arrest and related court records for the felony offense of indecency with a child. Cloud argues that the trial court abused its discretion by refusing to admit certain evidence. We affirm the trial court's order.

### Background

In 1993, two friends of appellant's daughter, V, accused appellant of sexually assaulting them while they were visiting V at appellant's house. The police interviewed V, who was nine years old. During the interview, V told the police that appellant had touched her inappropriately the year before. When V left the interview, she recanted almost immediately.

The State indicted appellant on charges involving all three girls. Three years later, the State moved to dismiss the indictment against appellant on the charges involving V because of her recantation. A jury convicted appellant on the charges involving V's friends. The record

showed that appellant was incarcerated on those convictions at the time he filed his pro se petition for expunction in August 2013.

In the petition for expunction, appellant stated he was arrested "for having intercourse with two girls under age 14." He alleged, among other things, the charge as to the older girl "was changed" when the DNA test "established that the sperm in [her] panties . . . did not match [his] DNA"; the accusations by V's friends against him were "fabrications"; the State aided the girls in the "fabrications"; V was "grilled" by the police, her mother was not allowed in the room, and the police intimidated V and put words in her mouth; and the State dropped the charge of indecency with a child related to V "when it became understood that the allegation was no more than the imagination of Sr. Cpl. Mike Kemp of the Dallas Police Department."

After appellant filed the petition, V wrote a letter to the Dallas County District Attorney's office describing how the police interviewed her back in 1993. She said she "told Detective Kemp repeatedly over the course of the interview that my Father had never once in my life touched me inappropriately." She wrote that Kemp "corner[ed] me in the room and badger[ed] me, responding to everything I said with 'Are you sure?'" She said she "was too exhausted to resume the interview [and] broke down and used anatomically-correct [sic] dolls to fabricate a lie so Kemp would accept what I was saying and let me out of the room." She wrote that she was "terrified of these men"[1] and that she suffers "from Post-Traumatic Stress Disorder as a result of the events that took place over that 48-hour period." She also said "I suffer from paranoia, emotional and mental illness, and I have a very pronounced mistrust and distaste for authority." She said "[t]his matter has weighed on my shoulders a great deal for over half of my life. I hope you can understand why I would like your assistance in helping my Father to be rid of it for good." At the time V wrote the letter, she was incarcerated in a state jail. She wrote that she was

---

[1] She said there were two other men watching her from behind a two-way mirror.

"a part of the high-statistic group of people with incarcerated parents who end up in prison themselves." She also mentioned in the letter that her father was "having to put together a new trial for himself regarding the original case" and that she wanted "to assist him in any way that I can[.]"

At the expunction hearing, V testified that she wrote the letter. She said her earlier accusation of inappropriate touching against her father was not true. And she said the reason she knew "about such things" at nine years old was because she "was exposed to sexual material at a very young age. Unsupervised, obviously. I would go to people's houses that they had access to things that belonged to their parents that I should not have been – none of us should have been unsupervised at all to be able to have access to these things. . . . Television, other influences, school." V testified that she recanted to her mother immediately after her mother picked her up from talking to the police, to the district attorney soon after that, and to various therapists as well. She said she also recanted to a supervisor of the Child Protective Service in appellant's presence; appellant recorded that recantation. V testified that in her opinion the indictment was obtained based on false information.

Through his pro se examination of V, appellant attempted to introduce evidence that the Dallas Police Department stopped videotaping interviews with children "because they were getting so many of their cases thrown out[.]" The trial court sustained the State's relevance objection, and appellant argued that "[t]here is a nexus between this case and the one [sic] that I'm currently incarcerated for. And for that reason this issues [sic] is germane. The nexus cannot be denied." The court reminded appellant about the purpose of the expunction hearing, and appellant said, "Picking and choosing carefully my words, because it's apparent to me, and to the Court, that the expunction here is an important issue, but it is not the most important issue on the table by any stretch of the imagination." Later, appellant referred to the other cases

–3–

involving V's friends, and the court interrupted appellant to remind him that "[t]hose are not relevant, sir. . . . Nothing about any of your other cases is relevant."

The State did not call any witnesses, but the prosecutor read a portion of the police report into the record without objection:

> [The reporting officer] was investigating a listed suspect . . . for sexual assault charges regarding two complainants . . . . During the investigation, [V] was interviewed and stated between 1/21/92 to 5/28/92 she would live with her father, who is the suspect, part of the time. [V] stated while at the suspect's house, she was alone with him and he began touching her breasts and vagina with his hands. [V] stated she was in the living room and he only touched her on the outside of her clothes. [V] stated that was – this has happened a lot of times in the past. [V] stated she remembered the dates because she was nine years old and in the third grade.

In closing argument, the State advised the court that if the court believed V, then appellant was entitled to an expunction. Appellant, in his closing argument, referred to

> [W]hat was going on . . . in the judicial systems and law enforcement during that era . . . some of that infects the case I'm in prison for now. In fact, a lot of it does. That same investigator that investigated this, investigated these cases and some of that same behavior exist here. . . . That's my position, that there is reason to have some of that put on the table here to make it of record that Mr. Kemp, not only did he investigate, or grilled my child, he grilled some other children, too.

The trial court denied the motion for expunction. The court did not file findings of fact and conclusions of law, and none were requested.

Appellant is pro se on appeal. We construe his argument to be that the trial court abused its discretion by not allowing him to introduce evidence related to Kemp's alleged behavior with children during interviews.

### Applicable Law and Standard of Review

A person who has been arrested for a felony is entitled to have the records and files relating to the arrest expunged if

> (2) the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court-ordered community supervision . . . for the offense . . . , provided that

–4–

(A) . . . an indictment . . . charging the person with the commission of any felony offense arising out of the same transaction for which the person was arrested:

> . . . .

(ii) if presented at any time following the arrest, was dismissed . . . and the court finds that the indictment . . . was dismissed . . . because the presentment had been made because of mistake, false information, or other similar reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense . . . .

TEX. CODE CRIM. PROC. ANN. art. 55.01(a)(2)(A)(ii) (West Supp. 2014).

Because an expunction proceeding is civil in nature, appellant had the burden of proving the statutory requirements were met. *Tex. Dep't of Pub. Safety v. Foster*, 398 S.W.3d 887, 891 (Tex. App.—Dallas 2013, no pet.).

We review a trial court's ruling on a petition for expunction for an abuse of discretion. *Ex parte Jackson*, 132 S.W.3d 713, 715 (Tex. App.—Dallas 2004, no pet.). As the trier of fact, the trial court is solely responsible for weighing the evidence and determining the credibility of the witnesses. *See Keeter v. State*, 74 S.W.3d 31, 37–38 (Tex. Crim. App. 2002). And we must give proper deference to the trial court's ruling. *See id.*

We also review a court's evidentiary rulings for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). A trial court is in the best position to determine whether evidence should be admitted or excluded. *Id.* Consequently, we will not disturb the ruling "as long as the trial court's decision was within the zone of reasonable disagreement[.]" *Id.*

## Discussion

The only element in dispute at the expunction hearing was whether the indictment against appellant was dismissed because of false information or some similar reason indicating a lack of probable cause to believe appellant committed the offense of indecency with a child against V.

–5–

V was the only witness at the expunction hearing. She testified that the accusation she made against appellant was not true and that Kemp coerced her into making the accusation. V testified that she finally accused appellant after three hours of interviewing just so she could leave the room. But she also used anatomically correct dolls to demonstrate to Kemp how appellant touched her inappropriately, told Kemp where it happened, and explained why she was able to remember the details. The trial court observed V's demeanor, read V's letter, and listened to V's testimony about the recantation. The court impliedly determined V was not credible, and the record contains some basis to disbelieve V's recantation. *See Keeter*, 74 S.W.3d at 37–38.

But appellant contends that "[t]he evidence related to Mike Kemp's activities with children is sufficient to raise questions concerning his behavior with such children, that he makes cases by creation and fabrication and in the circumstance of [V], by threats and coercive means." Appellant elicited testimony from V about Kemp's alleged "activities with children" and, to the extent the evidence was relevant to whether V's accusation was coerced, the trial court allowed the evidence. However, the court did not allow appellant to offer any evidence that collaterally attacked the convictions related to V's friends. The court advised appellant that any evidence "about any of your other cases" is not relevant to the issue the court had to decide. We agree.

Appellant's burden at the hearing was to show his indictment was dismissed because of lack of probable cause to believe he committed the offense against V. *See* TEX. CODE CRIM. PROC. ANN. art. 55.01(a)(2)(A)(ii). Evidence of the manner in which Kemp interviewed V's friends is not relevant to whether V's recantation was credible. *See* TEX. R. EVID. 401, 402; *see also Keeter*, 74 S.W.3d at 37–38. Consequently, the trial court did not abuse its discretion by excluding the evidence. We resolve appellant's issue against him.

## Conclusion

We affirm the trial court's order.

_/Elizabeth Lang-Miers/_
ELIZABETH LANG-MIERS
JUSTICE

140177F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

EX PARTE JOHN CLOUD

No. 05-14-00177-CV

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. X13-1239-P.
Opinion delivered by Justice Lang-Miers,
Justices Francis and Whitehill participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant's petition for expunction is **AFFIRMED**.

Judgment entered this 23rd day of June, 2015.